IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JERRY WAYNE HADDOCK,                          07-CV-801-BR

        Plaintiff,                    OPINION AND ORDER

v.

LUCENT TECHNOLOGIES, Inc.,

        Defendant.


**ROGER A. HENNAGIN**
Roger A. Hennagin, P.C.
8 North State Street, Suite 300
Lake Oswego, OR 97304
(503) 636-0400

        Attorney for Plaintiff

**COURTNEY ANGELI**
Buchanan, Angeli, Altschul & Sullivan LLP
321 S.W. Fourth Avenue, Suite 600
Portland, OR 97204
(503) 974-5021

**JOHN HOUSTON POPE**
Epstein, Becker & Green, P.C.
250 Park Avenue
New York, NY 10177-1211
(212) 351-4500

        Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Lucent Technologies, Inc.'s Motion for Summary Judgment (#20).

On July 23, 2008, the Court heard oral argument on Defendant's Motion.  At that time, Plaintiff Jerry Wayne Haddock's counsel conceded Defendant's Motion as to Plaintiff's First Claim for unlawful age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, and Oregon Revised Statute § 659A.030.  Accordingly, the Court dismissed Plaintiff's First Claim with prejudice.

For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion as to Plaintiff's Second Claim for disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, *et seq.*, and Oregon Revised Statute § 659A.100, *et seq.*

## BACKGROUND

The following facts are taken from the parties' Concise Statements of Material Facts and the parties' submissions related to Defendant's Motion for Summary Judgment.

Plaintiff, an Oregon resident at all relevant times, was employed by Defendant and its predecessor, Western Electric Company, as an installer from 1966 to 2006 with the exception of

a two-year period from 1975-77 when Plaintiff was laid off due to a workforce reduction.  Plaintiff worked primarily as an installer of cellular towers.  On August 3, 2006, Plaintiff retired.

Defendant was formerly a part of AT&T.  AT&T owned Western Electric Company until approximately 1996, at which time AT&T merged Western Electric and a few other business units to create Defendant Lucent Technologies.  Defendant is a Delaware corporation headquartered in New Jersey and is authorized to do business in Oregon.

In 1981 Plaintiff was diagnosed with Type 1 diabetes.  The record reveals Plaintiff had some trouble managing his blood-sugar levels and had to be hospitalized in 1994 and 1995 due to hypoglycemic episodes.  In October 2004, Plaintiff suffered a hypoglycemic episode during a week in which he was working long hours, working swing shifts, and commuting between Portland and Eugene.  Scott Kemeny, M.D., his physician, recommended on October 28, 2004, that Plaintiff discontinue working to allow him to stabilize his blood-sugar levels.  On Plaintiff's return to work in February 2005, Dr. Kemeny restricted Plaintiff from working swing shifts unless he had two intervening days off and limited Plaintiff to no more than five consecutive days of work without two consecutive days off.  Plaintiff alleges this schedule was necessary for him to maintain steady blood-sugar

3 - OPINION AND ORDER

levels.

Plaintiff resumed work on day shifts only, and Herbert Turner, Plaintiff's manager at the time, accommodated Plaintiff's work restrictions.  In late May 2005, Defendant assigned Plaintiff to work that alternated between jobs requiring physical exertion and sedentary desk work.  Plaintiff asserts the abrupt changes in exertion upset his blood-sugar levels and caused him to suffer a second hypoglycemic episode at work.  Plaintiff became dizzy, his speech slurred, and he became disoriented. Plaintiff's co-workers gave him a soda and helped him to recover. Plaintiff was not immediately relieved from work after this episode.  On July 29, 2005, however, Defendant placed Plaintiff on extended administrative leave.  Defendant alleges Ron Jansen, the new Operations Area Manager who replaced Turner, was concerned Plaintiff's hypoglycemic episodes risked the safety of Plaintiff and his coworkers because Plaintiff worked with high-voltage power in his position as an installer.  Plaintiff, however, alleges there were not any changes in his medical condition or in Defendant's business that warranted placing Plaintiff on administrative leave or to stop accommodating his limitations from diabetes, which Defendant had been doing since February 2005.

During his leave, Plaintiff requested Defendant to continue accommodating his diabetes at work.  Plaintiff also requested

4 - OPINION AND ORDER

Defendant to allow Plaintiff to switch jobs with Dennis "Duke" Snyder, the manager of Defendant's tool room and warehouse. Snyder worked a predominantly day-shift schedule and agreed to the switch. He, like Plaintiff, held Defendant's highest installer certification, and Plaintiff had some experience working in the tool room and warehouse. Plaintiff alleges it would only have taken 3-4 days of training for him to be able to perform Snyder's job.

Defendant contends it engaged in a good faith, interactive process to determine whether it could accommodate Plaintiff's work limitations. According to Plaintiff, however, the individuals who gathered information for Defendant in the interactive process (Theresa Andrecnick, manager of union contracts; Arvene Lorings, an equal-opportunity specialist who investigated allegations of unlawful discrimination; and Karen Utermahlen, a registered nurse who worked as disability support case manager) did not have any authority to make the decision whether to accommodate Plaintiff's medical condition. Plaintiff alleges Jansen had total authority to determine whether to accommodate Plaintiff. Plaintiff also alleges Jansen indicated that he did not want employees on the job who were "not 100%." Defendant, however, maintains Christopher Camacho, David Dokovic, Alvin Roseman, and Thomas Bevilacqua, some of whom were Jansen's superiors, were involved in the interactive process in addition

to Andrecnick, Lorings, and Utermahlen.  Although Defendant
acknowledges Jansen made the final decision that Defendant could
not accommodate Plaintiff's work limitations, Defendant alleges
Jansen did so with the concurrence of the entire group.
Defendant also denies Jansen had any bias toward disabled people
and noted Jansen had accommodated a different employee with
diabetes.

Defendant determined its installers needed to be able to
switch shifts and work long hours due to changing business
conditions, and, therefore, Defendant could not accommodate
Plaintiff's limitations.  Defendant also determined Plaintiff and
Snyder could not switch jobs because neither could be retrained
in a reasonable amount of time nor could Snyder perform the
installer job at Plaintiff's level of performance.  In addition,
Defendant asserts it did not have any other positions available
that Plaintiff could have performed without significant cost and
burden to Defendant.  Plaintiff ultimately applied for early
retirement on August 3, 2006, when his medical-leave benefits
expired.

On February 3, 2006, Plaintiff filed an administrative
complaint with the Equal Employment Opportunity Commission (EEOC)
and with the Oregon Bureau of Labor and Industry (BOLI) in which
he alleged disability discrimination arising from his forced
administrative leave on July 29, 2005.  BOLI issued a right-to-

6 - OPINION AND ORDER

sue letter on January 11, 2007.  The EEOC issued a right-to-sue letter on March 28, 2007.

On May 30, 2007, Plaintiff filed a complaint in Multnomah County Circuit Court in which he alleged two claims under parallel provisions of federal and state law:  unlawful age discrimination in violation of the ADEA and Oregon Revised Statute § 659A.030 and unlawful disability discrimination in violation of the ADA and Oregon Revised Statute § 659A.100, *et seq*.

On May 30, 2007, Defendant removed the case to this Court on the basis of diversity jurisdiction.  Defendant filed its Answer on July 23, 2007.

On May 9, 2008 Defendant filed its Motion for Summary Judgment (#20) as to each of Plaintiff's claims.  As noted, Plaintiff conceded his First Claim for age discrimination under both federal and state law.  Plaintiff now proceeds solely on his Second Claim that Defendant violated Plaintiff's rights under the ADA and Oregon Revised Statute § 659A.100, *et seq*.


## <u>STANDARDS</u>

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material

fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th
Cir. 2005).  In response to a properly supported motion for
summary judgment, the nonmoving party must go beyond the
pleadings and show there is a genuine issue of material fact for
trial.  *Id.*

An issue of fact is genuine "'if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.'"
*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th
Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
248 (1986)).  The court must draw all reasonable inferences in
favor of the nonmoving party.  *Id.*  "Summary judgment cannot be
granted where contrary inferences may be drawn from the evidence
as to material issues."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 957
(9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v.
Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir.
1982)).

A mere disagreement about a material issue of fact, however,
does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902
F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's
claims are factually implausible, that party must "come forward
with more persuasive evidence than otherwise would be necessary."
*Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004),
*as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005)(citing *Blue
Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir.

1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.


## DEFENDANT'S OBJECTIONS TO PLAINTIFF'S EVIDENCE

In its Reply, Defendant contends several portions of Plaintiff's submissions in support of his Response to Defendant's Motion should not be considered by the Court.

1. Defendant objects to Herbert Turner's Affidavit on the grounds that Turner lives outside of the geographical scope of the Court's compulsory process and that there is not a basis in Turner's Affidavit to believe that he would testify at deposition or at trial and, thus, that his testimony would be subject to cross-examination.

During oral argument, Counsel informed the Court counsel had a good-faith basis to believe that Turner would voluntarily appear and would testify consistently with the statements in his Affidavit at trial. On this basis, the Court overruled Defendant's objection and concluded Turner's Affidavit represented competent testimony.

2. Defendant also objects to numerous paragraphs of

Plaintiff's Affidavit on the ground that Plaintiff asserts matters beyond his personal knowledge.  In his Affidavit, however, Plaintiff testifies his statements are based on his personal, first-hand knowledge.

In any event, the Court has reviewed Plaintiff's Affidavit and concludes Plaintiff's statements do not appear to assert matters beyond his personal knowledge.  For example, Plaintiff sets out some of the symptoms of diabetes and indicates his assessment of what causes his blood-sugar levels to fluctuate. After 27 years of monitoring the effects of diabetes on his blood sugar, Plaintiff likely has an understanding of the disease and its effect on his body.  Moreover, Plaintiff attests to some of the skills required to perform his job as an installer as well as those needed to perform Snyder's job as a tool-room manager. After almost 40 years of employment with Defendant and its predecessors, it is reasonable to conclude that Plaintiff is familiar with these jobs.  The Court, therefore, overrules Defendant's objection to the extent it asserts Plaintiff's lack of personal knowledge.

3.   In addition, Defendant objects to several paragraphs of Snyder's Affidavit on the ground that Snyder asserts matters beyond his personal knowledge.  Similarly, Snyder affirmed in his Affidavit that his statements were based on his personal, first-hand knowledge.

After reviewing Snyder's Affidavit, the Court concludes
Snyder's statements are not beyond his knowledge.  For example,
Snyder has been employed by Defendant and its predecessors for
about 30 years, and his statements about the qualifications for
positions he has performed, the training required to perform
those positions, and his opinions as to his qualifications appear
to be within the scope of his personal knowledge.  The Court,
therefore, overrules Defendant's objection to those parts of
Snyder's Affidavit.  As to Snyder's opinion in paragraph 13 of
his Affidavit that Plaintiff's manager Jansen "wanted to get rid
of" Plaintiff, the Court notes the statement is merely Snyder's
personal opinion and the Court will weigh the statement
accordingly.

4.  Defendant objects to statements by Plaintiff and Snyder
in their Affidavits as to the meaning of the Collective
Bargaining Agreement (CBA) between the Communications Workers of
America and Lucent.  Defendant asserts the disputed statements
"cannot substitute for, or contradict, the text of the CBA
itself."  Defendant also offers Jansen's testimony to counter the
interpretation of the CBA by Plaintiff and Snyder and includes a
section of the CBA with Jansen's Affidavit.

The Court notes it is responsible for interpreting the CBA
and for determining the legal ramifications of its terms.  Thus,
the interpretation of the CBA by Snyder and Plaintiff is not

11 - OPINION AND ORDER

relevant to the Court's resolution of Defendant's Motion at this stage of the proceedings.  Accordingly, the Court disregards this material.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In his Second Claim, Plaintiff alleges Defendant unlawfully discriminated against Plaintiff on the basis of his disability in violation of the ADA and Oregon Revised Statute § 659A.100, *et seq*.  Oregon Revised Statute § 659A.139 requires Oregon's disability discrimination provisions to be construed to the extent possible in a manner consistent with similar provisions of the ADA.  The same analysis, therefore, applies to Plaintiff's claims under both the ADA and Oregon law.  *See Washburn v. Columbia Forest Prod., Inc*. 340 Or. 469, 476-77 (2006).  *See also Wheeler v. Marathon Printing, Inc.*, 157 Or. App. 290, 301 n.6 (1998).

Defendant contends it is entitled to summary judgment on Plaintiff's claim for disability discrimination on two grounds: (1) Plaintiff is not disabled within the meaning of the relevant statutes and, therefore, is not entitled to protection under these statutes, and (2) Defendant made a good faith, interactive effort when it determined it could not reasonably accommodate Plaintiff's limitations arising from his diabetes.

**I.   The Law.**

Title I of the ADA ensures fair opportunities in the workplace for qualified individuals with disabilities by prohibiting discrimination against those individuals and by requiring employers to reasonably accommodate their disabilities. 42 U.S.C. § 12112. *See also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 477-78 (1999). The ADA provides in pertinent part:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). To state a *prima facie* case of discrimination under the ADA, a plaintiff must prove he is a qualified individual with a disability and that his employer discriminated against him because of his disability. *Sanders v. Arneson Prod., Inc.*, 91 F.3d 1351, 1353 (9th Cir. 1996).

An individual is disabled within the meaning of the ADA if he has "a physical or mental impairment that substantially limits one or more of [his] major life activities" or if his employer regards him "as having such an impairment." 42 U.S.C. §§ 12102(2)(A), ©). The Supreme Court held the term disability should be strictly interpreted "to create a demanding standard for qualifying as disabled" and that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing

activities that are of central importance to most people's daily lives." *Toyota Motor Mfg. Ky. Inc. v. Williams*, 534 U.S. 184, 197-98 (2002). The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).

"As with discrimination cases generally, a plaintiff in an ADA case at all times bears the ultimate burden of establishing . . . he has been the victim of illegal discrimination based on his disability." *Gomez v. Am. Bldg. Maint.*, 940 F. Supp. 255, 257 (N.D. Cal. 1996)(citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)).

## II. Analysis.

As noted, Defendant contends Plaintiff has not shown genuine issues of material fact exist as to either of the elements required to establish a *prima facie* case of disability discrimination. In particular, Defendant contends Plaintiff is not a qualified individual with a disability because Plaintiff's diabetes does not "substantially limit" any of Plaintiff's major life activities nor did Defendant "regard" Plaintiff as having such a disability. Moreover, Defendant contends even if Plaintiff is entitled to protection under the ADA, Defendant

engaged in a good-faith, interactive process before determining it could not accommodate Plaintiff's limitations.

## A.  Disability.

The Court must first determine whether Plaintiff's diabetes constitutes a disability under the ADA.  As noted, Plaintiff bears the burden to prove that he has an impairment that "substantially limits [him in] one or more major life activities" or that Defendant "regarded [him] as having such an impairment." 42 U.S.C. § 12102.

### 1.  Substantially limited.

To determine whether an individual's physical or mental impairment "substantially limits one or more of the major life activities," the Court must determine (1) whether Plaintiff's diabetes is a "physical impairment"; (2) whether one or more of Plaintiff's "major" life activities is affected by his impairment; and, in light of those determinations, (3) whether Plaintiff's diabetes "substantially limits" the affected major life activity.  *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

Defendant does not dispute Plaintiff's diabetes constitutes a "physical impairment" for purposes of the first element of the test.  Indeed, the Ninth Circuit has held it has "little difficulty" concluding diabetes constitutes a "physical impairment" under the ADA.  *Fraser v. Goodale*, 342 F.3d 1032, 1038 (9th Cir 2003).

15 - OPINION AND ORDER

As to the second element, Plaintiff contends and Defendant does not dispute Plaintiff's diabetes affects the major life activities of eating and working.  The Ninth Circuit concluded in *Fraser* that eating constitutes a major life activity within the meaning of the ADA in accordance with several other circuits.  342 F.3d at 1039-40 (citing *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 923-24 (7th Cir. 2001)); *Forest City Daly Hous., Inc.*, 175 F.3d 144, 151 (2d Cir. 1999); *Land v. Baptist Med. Ctr.*, 164 F.3d 423, 424 (8th Cir. 1999)).

According to Defendant, however, Plaintiff has not provided sufficient evidence to create a jury question on the third element as to whether Plaintiff's diabetes "substantially limits" his major life activity of eating.  Defendant notes the Court's inquiry under the third element requires an individualized, case-by-case assessment.  *See Sutton*, 527 U.S. at 482-83.  In other words, there are not any impairments that categorically qualify an individual to protection under the ADA.  *Fraser*, 342 F.3d at 1039.  Courts must consider the nature and severity of a plaintiff's individual impairments in light of any corrective or mitigating measures that the plaintiff employs to alleviate or to reduce his symptoms.  *Sutton*, 527 U.S. at 483-89.  *See also Fraser*, 342 F.3d at 1038-39.

Defendant notes Plaintiff testified at his deposition that his diabetes does not limit his ability to walk, speak,

breathe, see, hear, think, perform manual tasks, or care for himself. Plaintiff also attested he can eat almost any food, but he must monitor his diet and, in particular, his carbohydrate intake. In paragraphs 9-12 of his Affidavit, however, Plaintiff provided the following description of his limitations resulting from his diabetes:

> 9. I test my blood sugar levels a minimum of three times per day before each meal.
> 10. I do my best to avoid blood sugar problems. This includes avoidance of physical exertion shortly before meal-time when my blood sugar is more likely to change than it is shortly after a meal.
> 11. I have to be very careful with my meals and my diet, and the type and amount of food that I can eat is dependent upon my blood sugar levels at the time.
> 12. Some of my diet restrictions are permanent and some vary according to my blood sugar level. I am required to be vigilant about the following areas of my diet:
> (a) Quantity of food/drink.
> (b) Carbohydrate count for all food/drink.
> (c) Quality of food.
> (d) Fat intake.
> (e) Timing of meals.
> (f) No skipped meals.
> (g) Adjusting food for insulin.
> (h) Adjusting food for exercise.

Defendant contends Plaintiff's statements at his deposition and in his Affidavit are inconsistent and contradictory and, therefore, should be disregarded under the "sham affidavit rule": *i.e.,* a party cannot establish the existence of a genuine issue of material fact with an affidavit that contradicts the party's

prior deposition testimony.  *See Hambleton Bros. Lumber Co. v. Balkin Enter., Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005).

Although Plaintiff's description in his Affidavit of the effects of his medical condition is significantly more detailed than in his deposition testimony, the two are not inconsistent.  At deposition, Plaintiff merely responded to a question by Defendant's counsel as to whether there are "foods [Plaintiff] cannot eat."  The Court also notes Plaintiff's testimony in his Affidavit does not appear to be inconsistent with any other part of the summary-judgment record.  Accordingly, the Court will consider both Plaintiff's statements at deposition and in his Affidavit for purposes of resolving Defendant's Motion.

In addition, Defendant contends even if the Court considers the substance of Plaintiff's Affidavit, Plaintiff is not a "brittle" diabetic who is entitled to protection under the ADA.  Defendant maintains Plaintiff has his diabetes under control with insulin and blood-sugar monitoring and that Plaintiff's diabetes, therefore, does not substantially limit Plaintiff's eating.  Defendant relies on the Ninth Circuit's opinion in *Fraser* in which the court concluded "simple dietary restrictions" and impediments to the "copious and tasty diets . . . our waistlines and hearts cannot endure" are insufficient to constitute substantial limitations.  342 F.3d at 1041.

18 - OPINION AND ORDER

In *Fraser*, however, the court found the plaintiff
presented a genuine issue of material fact existed as to whether
her diabetes substantially limited her ability to eat normally on
the basis of evidence in the record that

> Fraser must test her sugar several times
> daily, each test is painful, and takes close
> to five minutes to complete.  She must
> vigilantly monitor what and how much she
> eats.  She must time her daily shots and
> meals so carefully that it is not safe for
> her to live alone. . . .  She must always
> have certain foods available in case her
> blood sugar drops or skyrockets.  She must
> always be able to take time to eat or give
> herself injections to balance her blood sugar
> levels.  She cannot put a morsel of food in
> her mouth without carefully assessing whether
> it will tip her blood sugars out of balance.
> She cannot skip or postpone a snack or meal
> without cautiously studying her insulin and
> glucagon levels.  She must constantly,
> faithfully, and precisely monitor her eating,
> exercise, blood sugar, and other health
> factors, and even this is no guarantee of
> success.

*Id*.  The Ninth Circuit compared Fraser's limitations to those of
the plaintiff in *Lawson v. CSX Transportation, Inc.*, in which the
Seventh Circuit found the plaintiff's diabetes substantially
limited his ability to eat.  245 F.3d 916, 924-26 (7th Cir.
2001).  In *Lawson*, the plaintiff presented evidence on summary
judgment that demonstrated

> [o]n a daily basis, Mr. Lawson must endure
> the discomfort of multiple blood tests to
> monitor his blood glucose levels.  He also
> must adjust his food intake and level of
> exertion to take into account fluctuations
> in blood sugar.  When his blood sugar drops,

> he "must stop all other activities and find
> the kinds of food that will bring his levels
> back to normal or he will experience
> disabling episodes of dizziness, weakness,
> loss of mentation and concentration, and
> a deterioration of bodily functions."
> . . . .Mr. Lawson's physician characterized
> the measures he must take to manage his
> disease as "a perpetual, multi-faceted and
> demanding treatment regime" requiring
> "continued vigilance." . . . .If Mr. Lawson
> fails to adhere strictly to this demanding
> regimen, the consequences could be dire:
> he could experience debilitating, and
> potentially life-threatening, symptoms.  This
> evidence is sufficient for a jury to find
> that Mr. Lawson is substantially limited with
> respect to the major life activity of eating.

*Id*. at 924 (internal citation omitted).  *See also Nawroot v. CPC Intern.*, 277 F.3d 896, 904-05 (7th Cir. 2002).

Defendant urges the Court to compare these decisions with the Eleventh Circuit's opinion in *Collado v. United Parcel Service Co.* in which the court held the plaintiff had not provided sufficient evidence to establish that a genuine issue of material fact existed as to whether plaintiff's diabetes resulted in substantial limitations.  419 F.3d 1143 (11th Cir. 2005).  In *Collado*, the only evidence in the record on summary judgment pertinent to this issue was the plaintiff's testimony that diabetes did not in any way affect his ability to drive, walk, run, see, eat, digest food (as long as he took his insulin), work, or care for himself.  *Id.* at 1156.  The plaintiff attested diabetes did not affect his lifestyle in any way and that he was not limited by his diabetes as long as he took insulin.  *Id.*  On

20 - OPINION AND ORDER

this basis, the Eleventh Circuit distinguished the effects of
Collado's diabetes from the effects of the plaintiff in *Fraser*
and concluded "[n]o jury could find from his testimony that
Collado was substantially limited in eating or any other major
life activity." *Id.*

Here Plaintiff contends he has provided sufficient
evidence to establish that a genuine issue of material fact
exists as to whether his diabetes substantially limits his
ability to eat, because, like the plaintiffs in *Fraser* and
*Lawson*, Plaintiff has demonstrated he must check his blood sugar
multiple times per day, must take multiple shots of insulin per
day, cannot skip meals, must regulate the type and quantity of
food he ingests, and must be vigilant in monitoring the effects
of eating and physical exertion on his blood sugar. Moreover,
Plaintiff has testified his blood-sugar levels fluctuate even
when he uses insulin appropriately. The plaintiffs in *Fraser* and
*Lawson* also struggled to maintain steady blood-sugar levels even
though they took insulin, and each suffered a hypoglycemic
episode while at work. *Fraser*, 342 F.3d at 1035-35; *Lawson*, 345
F.3d at 927. As noted, Plaintiff suffered two such incidents at
work in which he suffered dizziness, fatigue, and disorientation.
Plaintiff also attested at deposition that he had been to the
hospital on other occasions in 1994 and 1995 due to erratic
blood-sugar levels. In addition, Dr. Kemeny, Plaintiff's

21 - OPINION AND ORDER

physician, attested he treated Plaintiff in 2004 for episodic blood-sugar fluctuations, and Robert Sioss, M.D., after reviewing Plaintiff's medical records, concluded Plaintiff's blood-sugar fluctuations reflect "erratic diabetic control."

Plaintiff also relies on the Ninth Circuit's recent decision in *Gribben v. United Parcel Service, Inc.*, in which the court found a genuine issue of material fact existed as to whether the plaintiff was substantially limited in several major life activities, including breathing and thinking, on the plaintiff's showing that when he worked in extreme temperatures he suffered from shortness of breath, chest pains, dizziness, and fatigue and had difficulty concentrating. 528 F.3d 1166, 1170-71 (9th Cir. 2008). Defendant, in turn, attempts to distinguish the facts in *Gribben* on the basis that the plaintiff in *Gribben* experienced labored breathing "on and off all the time," which limited his level of exertion, but here Plaintiff's limitations are not as continuous or severe. The record, however, reflects Plaintiff is at constant risk of dizziness, fatigue, loss of consciousness, or worse if he cannot maintain steady blood-sugar levels and his eating limitations are persistent and require constant monitoring while the plaintiff in *Gribben* was only at risk of experiencing symptoms in extreme heat.

Viewing this record in the light most favorable to Plaintiff, the Court concludes a reasonable jury could find that

22 - OPINION AND ORDER

Plaintiff is substantially limited in his ability to eat and that
Plaintiff is a "qualified individual with a disability" entitled
to protection under the ADA.  With this unresolved issue of fact,
the Court need not consider Plaintiff's contention that he is
also substantially limited in the major life activity of working.
*See* 29 C.F.R. pt. 1630, app. § 1630.2(j)("If an individual is
substantially limited in any other major life activity, no
determination should be made as to whether the individual is
substantially limited in working.  For example, if an individual
is . . . substantially limited in the major life activity of
seeing, there is no need to determine whether the individual is
also substantially limited in the major life activity of
working.").  *See also Sutton*, 527 U.S. at 492 (citing 29 C.F.R.
pt. 1630, app. § 1630.2(j)), which indicates in *dicta* the Court's
"conceptual difficulty" with considering work as a major life
activity.

### 2.    "Regarded as" disabled.

Plaintiff alleges even if he is not found to be
substantially limited in a major life activity, he was "regarded
as" disabled by Defendant.  *See* 42 U.S.C. § 12102.  The Supreme
Court explained the "regarded as" claim in *Sutton*:

> There are two apparent ways in which
> individuals may fall within this statutory
> definition:  (1) a covered entity mistakenly
> believes that a person has a physical
> impairment that substantially limits one or
> more major life activities, or (2) a covered

23 - OPINION AND ORDER

> entity mistakenly believes that an actual,
> nonlimiting impairment substantially limits
> one or more major life activities.  In both
> cases, it is necessary that a covered entity
> entertain misperceptions about the individual
> -it must believe either that one has a
> substantially limiting impairment that one
> does not have or that one has a substantially
> limiting impairment when, in fact, the
> impairment is not so limiting. These
> misperceptions often "resul[t] from
> stereotypic assumptions not truly indicative
> of . . . individual ability."

547 U.S. at 489 (citing *School Bd. of Naussau County v. Arline*,

480 U.S. 273, 284 (1987)).  The Court emphasized the plaintiff

must show that his employer believes the plaintiff is substan-

tially limited in a major life activity and not merely that he is

unable to meet the requirements of the job.  *Sutton*, 547 U.S.

489-91.

Here Plaintiff's sole basis to support his "regarded

as" claim is that Jansen, his manager, regarded Plaintiff as less

than 100% and that he did not want "employees to return to the

job if they were not 100%."  Plaintiff, however, does not offer

evidence that Defendant misperceived Plaintiff's diabetes as more

limiting than it in fact was or that Defendant mistakenly

believed that Plaintiff had a disability when he did not.  *See*

*id.*  The record reflects Defendant believed Plaintiff could not

perform his job because of the restrictions on his schedule, and

Plaintiff does not point to any evidence that Defendant's belief

was mistaken as to the severity of Plaintiff's condition.  The

fact that Defendant knew about Plaintiff's diabetes is not
sufficient to establish a genuine issue of material fact exists
as to whether Defendant regarded Plaintiff as disabled. *Id*.  The
Court, therefore, concludes Plaintiff has not established a
genuine issue of material fact exists as to his claim that
Defendant "regarded [him] as" having an impairment that
substantially limits his ability to perform a major life
activity.

> **B.   Reasonable Accommodation.**

If an employee is entitled to protection under the ADA,
an employer may not discriminate against him on the basis of
his disability.  42 U.S.C. § 12112.  As noted, the failure
of an employer to reasonably accommodate an employee's
disability constitutes discrimination under the ADA.  42 U.S.C.
§ 12112(b)(5)(A).  After "an employer becomes aware of the need
for accommodation, that employer has a mandatory obligation under
the ADA to engage in an interactive process with the employee to
identify and implement appropriate reasonable accommodations."
*Humphrey v. Mem'l Hosp. Ass'n,* 239 F.3d 1128, 1137 (9th Cir.
2001). *See also Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d
1080, 1096-97 (9th Cir. 2001).  The interactive process is
triggered either by a request for accommodation from the disabled
employee or by the employer's recognition of the need for such an
accommodation.  *Brown v. Lucky Stores*, 246 F.3d 1182, 1188 (9th

Cir. 2001).  The employer's interactive process must include communication with the employee and "a good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." *Id.*  To be reasonable, an accommodation must enable the employee to perform the duties of his position.  *Id.*  Examples of reasonable accommodations "may include"

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

Plaintiff contends Defendant failed to engage in the required good-faith interactive process because Defendant did not accommodate Plaintiff's work limitations even though Defendant could have reasonably accommodated Plaintiff's request to work no more than five consecutive days without two intervening days off and to have two days off between changing shifts.  Plaintiff also argues Defendant could have reasonably accommodated his limitations by allowing Plaintiff to switch positions with Snyder and to manage Defendant's tool room and warehouse.  Plaintiff alleges Defendant chose not to accommodate him because Defendant did not want employees who, as Snyder stated, were "not 100%."

The Court notes Plaintiff's requested accommodations are the type anticipated by the ADA and the regulations that interpret the statute. *See* 42 U.S.C. § 12111(9). After a plaintiff establishes his suggested accommodations are reasonable on their face, the defendant bears the burden of proving those accommodations would be unduly burdensome. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002). Undue hardship means the accommodation would cause the employer significant difficulty or expense. 42 U.S.C. § 12111(10). Federal regulations describe Defendant's burden as follows:

> For example, to demonstrate that the cost of an accommodation poses an undue hardship, an employer would have to show that the cost is undue as compared to the employer's budget. Simply comparing the cost of the accommodation to the salary of the individual with a disability in need of the accommodation will not suffice. Moreover, even if it is determined that the cost of an accommodation would unduly burden an employer, the employer cannot avoid making the accommodation if the individual with a disability can arrange to cover that portion of the cost that rises to the undue hardship level, or can otherwise arrange to provide the accommodation . . . .
>
> Excessive cost is only one of several possible bases upon which an employer might be able to demonstrate undue hardship. Alternatively, for example, an employer could demonstrate that the provision of a particular accommodation would be unduly disruptive to its other employees or to the functioning of its business.

29 C.F.R. Pt. 1630, App. § 1630.15. *See also* 42 U.S.C. § 12111(10).

27 - OPINION AND ORDER

Defendant maintains it took meaningful steps to engage
Plaintiff in an interactive process for the purpose of
determining whether it could accommodate Plaintiff's limitations.
Defendant contends it determined through this process that it was
not reasonable to accommodate Plaintiff's work limitations either
in his position as an installer or through switching positions
with Snyder.  In addition, Defendant asserts it terminated
Plaintiff on the ground that Plaintiff could not perform the
duties of his position without accommodations that would unduly
burden Defendant.  Thus, Defendant argues it did not discharge
Plaintiff on the basis of any discriminatory motive.

Defendant, however, does not offer any specific evidence to
support its assertion such as a comparison of costs of the
accommodation and the effect on Defendant's budget.  Although
Defendant alleges the accommodation of Plaintiff's limitations as
an installer were not feasible because of changes in the nature
of its cellular installations that require installers to work
swing shifts on short notice, Plaintiff provides the Affidavit of
Herbert Turner, Defendant's former manager who supervised
Plaintiff, who attests he was able to accommodate Plaintiff's
work limitations and that there were not any changes in the work
environment that would have made accommodating Plaintiff unduly
burdensome for Defendant.  In addition, Karen Utermahlen
indicates in her notes from April 26, 2005,

28 - OPINION AND ORDER

> [Turner] can guarantee [Plaintiff] will work
> a steady 5 day shift with a 2 day break
> before switching to a different shift.  We
> can NOT guarantee that Mr. Haddock will never
> work nights because there is night work but
> we can guarantee that he will have 2 days off
> between when switching to a different shift.
>
> * * *
>
> [W]e would guarantee a steady 5 day shift and
> if there is a need for [Plaintiff] to switch
> shifts the schedule will accommodate him
> having off 2 days to accommodate his needs.

The parties also dispute whether Defendant would have been unduly burdened by placing Plaintiff in the position of tool room and warehouse manager and placing Snyder in Plaintiff's position as an installer.  As noted, Plaintiff attested he had experience working in the tool room and in the warehouse, and Snyder held Defendant's highest installer certification.  In their Affidavits, Plaintiff, Turner, and Snyder testify to the ability of Plaintiff and Snyder to perform each other's position with a minimum of training.  Each of the affiants are or were experienced employees of Defendant.  Defendant, nevertheless, counters their testimony with Affidavits from managers Jansen and Thomas Bevilacqua, who attest Plaintiff would need one to two months of training to take Snyder's position, that Snyder is a less skilled installer than Plaintiff, and that switching their positions would unduly burden Defendant.

Viewing the facts in the light most favorable to Plaintiff, the Court concludes this record establishes genuine issues of

29 - OPINION AND ORDER

material fact exist as to whether Defendant could have reasonably accommodated Plaintiff's limitations.

<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** Defendant's Motion as to Plaintiff's Second Claim for disability discrimination to the extent that Plaintiff alleges discrimination on the ground that he is disabled and that Defendant did not accommodate his disability as required under the ADA and Oregon Revised Statute § 659A.100, *et seq*.  The Court, however, **GRANTS** Defendant's Motion as to Plaintiff's Second Claim to the extent that Plaintiff alleges he was "regarded as" disabled by Defendant pursuant to the ADA and Oregon Revised Statute § 659A.100, *et seq*.

IT IS SO ORDERED.

DATED this 29th day of August, 2008.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge